# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL DIVERSITY
1536 Wynkoop St., Ste. 421
Denver, Colorado 80202,

ROCKY MOUNTAIN WILD,
1536 Wynkoop St., Suite 900
Denver, Colorado 80202,

WESTERN WATERSHEDS PROJECT
319 South 6th Street
Laramie, Wyoming 82070,

WILDEARTH GUARDIANS
301 N. Guadalupe Street, Ste 201
Santa Fe, New Mexico, 87501,

and

YELLOWSTONE TO UINTAS CONNECTION
205 North Main St.
Paris, ID 83261,

       Plaintiffs,

  v.

UNITED STATES BUREAU OF LAND
MANAGEMENT
760 Horizon Drive
Grand Junction, CO 81506,

WILLIAM PERRY PENDLEY, in his official
capacity as Deputy Director for Policy and
Programs, U.S. Bureau of Land Management
1849 C Street N.W.
Washington, D.C. 20240,

DAVID BERNHARDT in his official capacity
as Secretary, U.S. Department of the Interior
1849 C Street N.W.
Washington, D.C. 20240,

Case No. 1:21-cv-00174-TSC

**FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF**

and,

THE UNITED STATES DEPARTMENT OF
THE INTERIOR
1849 C Street N.W.
Washington, D.C. 20240

      Defendants.

## INTRODUCTION

1.     The Appointments Clause to the United States Constitution requires that the President nominate and the Senate confirm the heads of significant federal agencies—a process designed to preserve the balance of power among the three branches of government. In stark contrast to this structure, and for the entirety of the current Administration, the U.S. Bureau of Land Management ("BLM") has been led by a series of acting directors, most notably by William Perry Pendley. Pendley served as Acting BLM Director for more than a year, and well into the tenure of the current administration, under color of a series of "temporary" authorizations that were ostensibly intended to fill vacancies "*during the presidential transition pending senate confirmation*" of a Constitutionally nominated and appointed Director. Secretary David Bernhardt, Order No. 3345 Amendment No. 32 (May 5, 2020) (emphasis added).

2.     The Federal Vacancies Reform Act is the safeguard chosen by Congress to prevent Presidents from circumventing the Constitution's separation of powers by allowing individuals to run federal agencies without being confirmed by the Senate. Notwithstanding this safeguard, that is precisely what occurred here. As a result, Pendley's tenure, and multiple actions the Bureau has taken during his tenure, violate the law.

3.     Plaintiffs Center for Biological Diversity, Rocky Mountain Wild, Western Watersheds Project, WildEarth Guardians and Yellowstone to Uintas Connection (collectively

"Conservation Groups") bring this civil action for declaratory and injunctive relief to challenge

Federal Defendants' unlawful approval of nine Resource Management Plans ("RMP") and

related projects, which govern the management of more than 6.5 million acres of public lands

and minerals, because Defendant William Perry Pendley's exercise of the duties of Acting

Director of the U.S. Bureau of Land Management ("BLM") was unlawful under the

Appointments Clause, U.S. Const. art. 2, § 2, cl. 2; the Federal Vacancies Reform Act of 1998, 5

U.S.C. §§ 3345 *et seq.* ("FVRA" or "Act"); and the Administrative Procedure Act, 5 U.S.C. §§

701 *et seq.* ("APA"). The challenged RMPs are:

| RMP Name and Location | Date of Protest Resolution | Date of ROD |
|---|---|---|
| Central Coast Field Office Oil and Gas Leasing RMPA, CA | October 4, 2019 | October 4, 2019 |
| Ray Land Exchange RMPA, AZ | October 18, 2019 | October 24, 2019 |
| Tres Rios Field Office ACEC RMPA, CO | January 29, 2020 | January 29, 2020 |
| Oklahoma, Kansas, and Texas Integrated RMPs, NM, OK, KA, TX | February 7, 2020 | March 11, 2020 |
| Dairy Syncline Mine and Reclamation Plan FEIS and 2012 Pocatello RMPA, ID | February 20, 2020 | April 2, 2020 |
| Haiwee Geothermal Leasing Plan RMPA, CA | April 3, 2020 | April 21, 2020 |
| Gemini Solar Project RMPA, CA | March 6, 2020, Supplement issued August 14, 2020 | May 8, 2020 |
| Moneta Divide Natural Gas and Oil Development Project and Casper RMPA, WY | May 1, 2020 | August 3, 2020 |

## JURISDICTION AND VENUE

4.     This action arises under the U.S. Constitution, the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. §§ 3345 *et seq.*, the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C §§ 701 *et seq.*

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346 because it arises under the laws of the United States and involves the United States as a defendant.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (e) because the Resource Management Plans concern public lands that BLM manages pursuant to federal statutes, officers of the United States are defendants, and a substantial part of the events and omissions giving rise to this case are related to this district.

7.     This action reflects an actual, present, and justiciable controversy between Plaintiffs and Defendants.

8.     Plaintiffs' requested relief is proper under 28 U.S.C. §§ 2201-2202, 5 U.S.C. § 3348(d), and 5 U.S.C. § 706.

## PARTIES

9.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("Center" or "CBD") is a nonprofit conservation organization headquartered in Tucson, Arizona, with offices throughout the United States and Mexico. The Center uses science, policy, and law to advocate for the conservation and recovery of species, great and small, hovering on the brink of extinction and their habitats. The Center has over 81,000 members and 1.7 million online members and activists. The Center and its members use public lands, including lands that will be affected by

the Resource Management Plans challenged in this action, for professional, scientific, educational, aesthetic, and recreational interests, and spiritual renewal. The Center brings this action on its own behalf and on behalf of its adversely affected members.

10.     Plaintiff ROCKY MOUNTAIN WILD ("RMW") is a nonprofit organization that protects, connects, and restores wildlife populations and wildlands in the Southern Rockies region. Because public lands are fundamental for the protection of biodiversity in the region, RMW actively engages in land planning processes, scientific research, public education, and advocacy to protect key habitats and wildlife movement corridors on Bureau of Land Management lands. RMW has a long-standing interest in the habitats and species located in southwest Colorado, and its members use areas within the BLM's Tres Rios Field Office in southeast Colorado for recreation, citizen science exploration, and wildlife viewing. Rocky Mountain Wild has a long history of working to protect habitat for rare plants and the Federally listed Gunnison sage-grouse. Rocky Mountain Wild brings this suit on its own behalf and on behalf of its adversely affected members.

11.     Plaintiff WESTERN WATERSHEDS PROJECT ("WWP") is a is a nonprofit conservation organization founded in 1993, with more than 12,000 members and supporters, and has staff and field offices in Idaho, Montana, Wyoming, Arizona, Utah, Nevada, Oregon, and California. WWP works throughout the West, including in Colorado, to influence and improve public land management throughout the West with a primary focus on the negative impacts of livestock grazing on 250 million acres of western public lands, including harm to ecological, biological, cultural, historic, archeological, scenic resources, wilderness values, roadless areas, Wilderness Study Areas and designated Wilderness. WWP brings this action on its own behalf and on behalf of its adversely affected members.

12.     Plaintiff WILDEARTH GUARDIANS ("Guardians") is a nonprofit conservation organization dedicated to protecting and restoring the wildlife, wild places, wild rivers, and health of the American West. Guardians has offices in Colorado, Montana, New Mexico, Arizona, Washington, and Oregon. With more than 175,000 members and supporters, Guardians works to sustain a transition from fossil fuels to clean energy in order to safeguard the West. Guardians members live, work, and recreate in areas that will be adversely impacted by implementation of the of the Resource Management Plans challenged herein. Guardians has actively engaged on issues related to the federal government's management of public lands and publicly owned fossil fuel minerals throughout the American West. The organization and its members have an interest in ensuring that management of public lands and fossil fuels takes into account concerns such as climate change, water and air quality impacts, and cumulative impacts to the western landscape. Guardians brings this action on its own behalf and on behalf of its adversely affected members.

13.     Plaintiff YELLOWSTONE TO UINTAS CONNECTION ("Y2U") is a nonprofit organization headquartered in Paris, Idaho. The organization was named for the Regionally Significant Wildlife Corridor that is a crucial high elevation linkage between the Greater Yellowstone Ecosystem and northern Rockies and the Uinta Mountains in Utah and connecting to the southern Rockies. The goal of Y2U is to restore the integrity of this Corridor so that it can once again function as a genetic connection between the northern and southern Rockies and core wildlife populations that currently occur in these places. Since its inception, Y2U has engaged in analysis, monitoring, commenting and objecting to numerous projects proposed by the BLM and other agencies in this corridor that threated to further fragment and degrade the habitat of this corridor for wildlife, including such species as Canada lynx, grizzly bears, wolverine, sage

grouse, bighorn sheep, cutthroat trout and other native species. Y2U members, board and staff use the public lands in and surrounding this Corridor for spiritual renewal, research, observing wildlife and other outdoor activities. Y2U and its members, board and staff use the public lands surrounding the project area for the Dairy Syncline Mine development and associated Reclamation Plan and amendment to the 2012 Pocatello ARMP.

14.     Conservation Groups and their members have concrete and particularized interests in BLM's implementation through the challenged RMPs of goals, objectives, and planning decisions that will affect the public lands concerned and have significant effects to those lands and surrounding resources, including in the protection of fragile ecosystems, wildlands, air, water, habitat, wildlife, and a livable climate. Conservation Groups and their members use and enjoy the public lands within the RMP planning areas for hiking, hunting, camping, photography, aesthetic enjoyment, spiritual contemplation, agriculture, and other vocational, scientific, and recreational activities. The past, present, and future enjoyment of these benefits by Conservation Groups and their members has been, is being, and, unless the relief requested in this complaint is granted, will continue to be irreparably harmed by the process through which BLM approved the RMPs, and by BLM's resulting actions based on those RMPs. These injuries would be redressed by the relief requested in this complaint.

15.     Defendant WILLIAM PERRY PENDLEY is sued in his official capacity as BLM's Deputy Director for Policy and Programs and for actions he carried out in his capacity as BLM's Acting Director with regard to the challenged RMPs and related actions. While carrying out the functions and duties of Acting Director, Pendley served as the highest-ranking BLM official and was responsible for establishing national strategies, goals and objectives for RMPs pursuant to FLMPA, for providing national policy guidance and direction for land use planning

and land use plan evaluation, and for resolving protests to proposed RMPs and RMP amendments.

16.    Defendant UNITED STATES BUREAU OF LAND MANAGEMENT is an agency within the U.S. Department of the Interior and is the federal agency charged with managing more than 245 million acres of public land in the United States and nearly 700 million acres of federal subsurface mineral estate. In this capacity, BLM is responsible for implementing and complying with federal law, including the federal laws implicated by this action.

17.    Defendant DAVID BERNHARDT is sued in his official capacity as Secretary of the United States Department of the Interior. As Secretary, Mr. Bernhardt is the highest-ranking official within the U.S. Department of the Interior, and in that official capacity is responsible for managing the public lands, resources, and mineral estates of the United States, including the lands and resources at issue herein, and is responsible for implementing and complying with federal law, including the legal requirements that form the basis of this action. The actions of Secretary Bernhardt at issue herein are his appointment of Pendley as Acting BLM Director through a Secretarial Order and his reauthorization of Pendley's appointment through four subsequent amendments to that Order.

18.    Defendant UNITED STATES DEPARTMENT OF THE INTERIOR is an executive department of the United States Government that is responsible for the conservation and management of the Nation's natural resources, including its public lands, resources, mineral estates and cultural heritage.

## LEGAL BACKGROUND

### I.    Appointments Clause and Federal Vacancies Reform Act

19.    The U.S. Constitution's Appointments Clause "prescribes the exclusive means" for appointing "Officers of the United States." *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2051 (2018). "Officers of the United States" are officers that exercise "significant authority pursuant to the laws of the United States." *Buckley v. Valeo*, 424 U.S. 1, 126 (1976). Article II of the Constitution vests the President with the power to nominate and "by and with the Advice and Consent of the Senate" appoint such officers. U.S. Const. art. II, § 2, cl. 2.

20.    The Appointments Clause and, in particular, the Senate's advice and consent power, are among "the significant structural safeguards of the constitutional scheme." *Edmond v. United States*, 520 U.S. 651, 659 (1997). The Framers designed the Appointments Clause as a check on the President's personal favoritism and to ensure the appointment of qualified officers. *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 935 (2017) (citing The Federalist No. 76, at 457 (Alexander Hamilton) (Clinton Rossiter ed., 1961)).

21.    When a vacancy arises in an office that requires Presidential appointment and Senate confirmation (a "PAS office"), the functions of that office may go unperformed if the President and the Senate cannot agree on a nominee. To mitigate the interbranch conflict, while protecting the Constitution's separation of powers, Congress has long provided to the President limited authority to direct certain officials to temporarily carry out the nondelegable functions and duties of a vacant PAS office in an acting capacity without Senate confirmation. Congress has granted that limited authority through different statutes over time; the most recent being the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. §§ 3345 *et seq.*

22.    The FVRA provides the "exclusive means for temporarily authorizing an acting official to perform the functions and duties" of a vacant PAS office. *Id.* § 3347(a).

23.    Under the FVRA, Congress authorized three classes of government officials to perform acting service in a vacant PAS office. The general rule is that the first assistant to the vacant PAS office shall become the acting officer. *Id.* § 3345(a)(1). The President, and only the President, may override the general rule by directing either a person who already serves in a PAS office or an officer or employee serving in a senior position within the relevant agency for at least 90 days in the 365-day period preceding the vacancy, to perform the nondelegable functions and duties of the vacant PAS office in an acting capacity. *Id.* § 3345(a)(2), (3).

24.    Under the FVRA, subject to limited exceptions, a person may not serve as an acting officer if the President submits to the Senate their nomination "for appointment to such office" or if they have held the acting role for "longer than 210 days, beginning on the date the vacancy occurs." *Id.* §§ 3345(b), 3346(a).

25.    If the President's temporary authorization of an acting official to perform the duties and functions of a vacant PAS office does not comply with the FVRA, the office must remain vacant and, in the case of a sub-cabinet agency, only the Executive agency's head—in this case the Secretary of the Interior—may perform the nondelegable functions and duties of the vacant office. *Id.* § 3348(b).

26.    The FVRA defines the term "function or duty" to mean any function or duty of the PAS office that is established by statute or regulation and is required by statute or regulation "to be performed by the applicable officer (and only that officer)." 5 U.S.C. § 3348(a)(2).

27.    Congress established the office of the BLM Director under the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701 *et seq.*, and mandated that appointments to that

position be made "by the President, by and with the advice and consent of the Senate." *Id.* §
1731(a). As a result, the office of the BLM Director is a PAS office and the President's
designation of an Acting BLM Director to temporarily fill a vacancy in that office must be in
accordance with the FVRA. 5 U.S.C. § 3345(a).

28.     Any "action taken by any person" who serves as an acting officer in violation of
the FVRA "shall have no force and effect" and "may not be ratified." *Id.* § 3348(d)(1), (2).

## II.     Federal Land Policy and Management Act

29.     The Federal Land Policy and Management Act ("FLPMA") is a comprehensive
statute designed to ensure that BLM-administered public lands are "managed in a manner that
will protect the quality of scientific, scenic, historical, ecological, environmental, air and
atmospheric, water resource, and archeological values." 43 U.S.C. § 1701(a)(8).

30.     FLPMA requires BLM, with public participation, to develop and maintain land-
use plans for the use of the public lands that it manages. *Id.* § 1712(a). Under FLPMA's
implementing regulations, BLM must develop resource management plans. 43 C.F.R. § 1610.1.

31.     The BLM Director is required to render a decision on the protest of any resource
management plan and their decision "shall be in writing and shall set forth the reasons for the
decision." *Id.* § 1610.5-2(a)(3). Regulations require the BLM Director alone to consider and
resolve recommendations and protests on RMPs. *See* 43 C.F.R. §§ 1610.3-2(e), 1610.5-2(a)(3).
This role is therefore a nondelegable "function or duty" of the BLM Director under the FVRA. 5
U.S.C. § 3348(a)(2).

32.     The BLM Director's protest ruling finalizes the resource-management-planning
process. *Id.* § 1610.5-2(b); *Or. Natural Desert Ass'n v. Bureau of Land Management*, 625 F.3d
1092, 1097 (9th Cir. 2010).

33.     Once BLM approves a resource management plan, "[a]ll future management authorizations and actions . . . shall conform to the approved plan." *Id.* § 1610.5-3(a).

34.     FLPMA provides that BLM must manage public lands "on the basis of multiple use and sustained yield." 43 U.S.C. § 1701(a)(7). "Multiple use" includes:

> [A] combination of balanced and diverse resource uses that takes into account the long-term needs of future generations for renewable and nonrenewable resources, including, but not limited to, recreation, range, timber, minerals, watershed, wildlife and fish, and natural scenic, scientific and historical values; and harmonious and coordinated management of the various resources without permanent impairment of the productivity of the land and the quality of the environment with consideration being given to the relative values of the resources and not necessarily to the combination of uses that will give the greatest economic return or the greatest unit output.

*Id.* § 1702(c). The non-impairment mandate within FLPMA's multiple use definition is unique among statutes that provide for multiples uses of natural resources. The term "sustained yield" is defined as "the achievement and maintenance in perpetuity of a high-level annual or regular periodic output of the various renewable resources of the public lands *consistent with multiple use. Id.* § 1702(h) (emphasis added).

35.     In applying FLPMA's principles of multiple use and sustained yield to manage public lands, "the Secretary shall, by regulation or otherwise, take any action necessary to prevent unnecessary or undue degradation of the lands." *Id.* § 1732(b).

### III.     Administrative Procedure Act

36.     Under the Administrative Procedure Act ("APA"), a reviewing court shall hold unlawful and set aside agency action that is, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," and "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (B), (D).

37.     An agency's compliance with FLPMA is subject to review under the APA. 5 U.S.C. §§ 701 *et seq*.

## FACTUAL BACKGROUND

### I.     Pendley's Tenure as Acting BLM Director

38.     On January 19, 2017, then-Secretary of the Interior Sally Jewell issued Secretarial Order No. 3345, to take effect at noon on January 20, 2017. The Order temporarily delegated the tasks assigned to various non-career political appointments to career officials during the pending Presidential transition. This included the delegation of the BLM Director's "functions, duties, and responsibilities" to Kristin Bail, the current Assistant Director of the Office of National Conservation Lands and Community Partnerships, "to ensure uninterrupted management and execution of the duties . . . during the Presidential transition period pending Senate-confirmation of new non-career officials." Secretarial Order No. 3345 (January 19, 2017).

39.     Donald J. Trump's Presidency began at noon on January 20, 2017. On or around that date, Neil Gregory Kornze, the last Senate-confirmed Director of the BLM, resigned and vacated the office. Since that date, BLM has operated without a Senate-confirmed director.

40.     Secretarial Order No. 3345 was amended thirty-two times during the three years following its issuance. During that period, and without the Senate's confirmation, five people exercised the BLM Director's "functions, duties, and responsibilities."

41.     The Acting BLM Director at the time of the actions challenged in this suit was William Perry Pendley. Pendley was installed in and maintained the position under authority of a series of amendments to Order No. 3345 and a memorandum through which he exercised the authority of the Director to delegate to himself the role of Acting Director.

42.     On July 29, 2019, Secretary of the Interior David Bernhardt amended Order No. 3345 to "temporarily redelegate" to Pendley the authority to exercise the BLM Director's "functions, duties, and responsibilities." David Bernhardt, Order No. 3345, Amend. No. 28 (July 29, 2019). The delegation was scheduled to expire on September 30, 2019. *Id.*

43.     Between September 30, 2019, and May 5, 2020, Secretary Bernhardt amended Secretarial Order No. 3345 four times to extend Pendley's temporary tenure. *See* David Bernhardt, Order No. 3345, Amend. No. 29 (Sept. 30, 2019), Amend. No. 30 (Jan. 2, 2020), Amend. No. 31 (Apr. 3, 2020), Amend. No. 32 (May 5, 2020).

44.     On May 22, 2020, Pendley, "exercising the delegated authority" of the BLM Director, issued a memorandum clarifying the "order of succession" for PAS offices under the "Vacancies Reform Act." *See* Memorandum from William Perry Pendley on Designation of Successors for Presidentially-Appointed, Senate-Confirmed Positions, to Casey Hammond (May 22, 2020) ("Succession Memo"). In the Succession Memo, Pendley designated himself as the "First Assistant for the purposes of the [FVRA] . . . and delegated to himself the authority to perform all duties and responsibilities of the Director". *Id.* Pendley exercised the BLM Director's authority pursuant to this self-delegation beginning on June 5, 2020.

45.     On June 30, 2020, President Trump nominated Pendley for the position of BLM Director.

46.     While Pendley's nomination for BLM Director was pending in the Senate, Pendley continued to serve as BLM's Acting Director in violation of the FVRA. *See* 5 U.S.C. § 3345(b)(1)(B) (prohibiting a person from serving as an acting officer if "the President submits a nomination of such person to the Senate for appointment to such office").

47.     On September 8, 2020, amid mounting controversy over Pendley's fitness to direct the BLM, President Trump withdrew Pendley's nomination for the position of BLM Director.

48.     On September 25, 2020, Chief District Judge Brian Morris of the United States District Court for the District of Montana, Great Falls Division, declared that "Pendley served unlawfully as the Acting Director of BLM" under the FVRA, and enjoined Pendley from exercising the BLM Director's authority. *Bullock v. U.S. Bureau of Land Mgmt.*, No. 4:20-cv-0062-BMM, 2020 WL 5746836, at *12 (D. Mont. Sept. 25, 2020). Judge Morris's Order noted that "further relief likely should be granted under the FVRA and APA" . . . because "Congress prescribed an additional form of relief for violations of the FVRA: that 'any function or duty of a vacant office' performed by a person not properly serving under the statute 'shall have no force or effect.'" *Id.* (quoting 5 U.S.C. § 3348(d)).

49.     On October 16, 2020, Judge Morris issued a subsequent order addressing the question of "further relief," under the FVRA's remedies provision and determining that three RMPs—the Lewistown RMP, Missoula RMP, and Miles City RMP Amendment—were unlawful and must be set aside under 5 U.S.C. § 3348(d)(1) and 5 U.S.C. §706(2)(A). *Bullock*, 2020 WL 6204334, at *4. Judge Morris noted that "it remains probable that additional actions taken by Pendley" should be similarly set aside. *Id.*

50.     Contrary to the FVRA and Judge Morris's order, Pendley continued to exercise the authority of BLM's Acting Director.

## II.     The Challenged Resource Management Plans

51.     On October 4, 2019, the BLM issued the Record of Decision ("ROD") for the Central Coast Field Office Oil and Gas Leasing RMPA, making 725,500 of the 1.1 million acres

15

of federal public lands and mineral estate under BLM's jurisdiction in the planning area available for oil and gas leasing. Plaintiff CBD participated in the administrative process, up to and including protesting the RMPA. CBD'S protest challenged the adequacy of BLM's analysis on multiple grounds, including but not limited to allegations that BLM had violated NEPA by failing to consider a reasonable range of alternatives, failing to analyze and disclose environmental impacts, and failing to allow for adequate public participation. CBD also protested BLM's failure to consult under the Endangered Species Act with the National Marine Fisheries Service for steelhead trout and coho salmon. The Director's Protest Resolution Report was issued the same day as the ROD, on October 4, 2019, when William Perry Pendley was serving in the role of Acting Director of the BLM pursuant to Amendment No. 29 of Secretarial Order 3345.

52.     On October 24, 2019, the BLM issued the ROD for the Ray Land Exchange RMPA, approving a proposed land exchange between the BLM and ASARCO, and approving three RMP amendments to facilitate the exchange. The approved exchange effectuates the transfer of 9,339 acres of public land near the ASARCO Ray Mine Complex and Copper Butte Property near Karny, Arizona to ASARCO for expansion of the Ray Mine. Plaintiffs CBD and Guardians participated in the administrative process, up to and including protest of the RMPA. In their protest, CBD and Guardians challenged the scope and adequacy of BLM's supplemental NEPA analysis on multiple grounds. The Director's Protest Resolution Report was issued on October 18, 2019, when Pendley was serving in the role of Acting Director of the BLM pursuant to Amendment No. 29 of Secretarial Order 3345.

53.     On January 29, 2020, the BLM issued the ROD for the Tres Rios Field Office Areas of Critical Environmental Concern RMPA, evaluating management decisions for 18

potential ACECs covering 80,000 acres in southwest Colorado and ultimately designating three

ACECs on 14,335 acres. Plaintiff Rocky Mountain Wild participated in the administrative

process for the RMPA, up to and including protesting the proposed RMPA. RMW's protest

challenged BLM's failure to utilize best available science in conducting the NEPA analysis, the

agency's failure to consult with the U.S. Fish and Wildlife Service regarding threatened

Gunnison sage-grouse, and for violation of FLPMA by not prioritizing ACEC designation. The

Director's Protest Resolution Report was also issued on January 29, 2020, when Pendley was

serving in the role of Acting Director of the BLM pursuant to Amendment No. 30 of Secretarial

Order 3345.

54.     On March 11, 2020, the BLM New Mexico State Director and Bureau of Indian

Affairs ("BIA") Regional Directors for the Southern Plains and Eastern Oklahoma Regions

issued RODs for the Oklahoma, Kansas, and Texas Final Joint EIS associated with the BLM

RMP and the associated BIA Integrated Resource Management Plans for the region. [1] The BLM

RMP dictates management on 15,100 acres of public land and 4,810,900 acres of federal mineral

estate. Plaintiff CBD participated in the administrative process, up to and including the protest

resolution process. CBD protested, among other issues, BLM's failure to adequately notify the

public of opportunities for participation and possible impacts to resources potentially affected by

the RMP, the agency's failure to consider a reasonable range of alternatives, its failure to take the

requisite hard look at impacts to water resources, and its failure to adequately analyze the direct,

indirect, and cumulative impacts of management under the RMP on climate change as a result of

---

[1] Plaintiff CBD participated in the administrative process, including the filing of a protest to the BLM ROD and RMP. Likewise, Conservation Groups here challenge only the BLM's issuance of its ROD and its protest resolution with regard to the BLM RMP, and do not challenge the BIA's RODs or Integrated Resource Management Plans for lands under BIA jurisdiction.

land management and mineral leasing under the RMP. The Director's Protest Resolution Report was issued on February 7, 2020, when Pendley was serving in the role of Acting Director of the BLM pursuant to Amendment No. 30 to Secretarial Order 3345.

55.     On April 2, 2020, BLM issued the ROD for the Dairy Syncline Mine and Reclamation Plan FEIS in response to a proposed plan submitted by the J.R. Simplot Company for development of two phosphate leases in southeast Idaho, to result in disturbance on 2,767 acres of BLM administered land. The Mine and Reclamation plan entailed a sale and exchange of land from the BLM to Simplot, which in turn required an amendment to the 2012 Pocatello ARMP. Plaintiffs Guardians, WWP, and Y2U participated in the administrative process, and Guardians participated in the protest resolution process. Guardians protested the proposed action on the grounds that the public lands proposed to be transferred to Simplot do not meet the criteria for disposal under FLPMA and that the EIS did not adequately analyze that issue. Plaintiff Y2U protested the proposed action on the grounds that the land disposal and ARMP amendment were not fully analyzed or disclosed through a hard look as required by NEPA; the differences in management of the tailings facility by BLM as opposed to the Idaho Department of Lands were not analyzed; there was not an adequate range of alternatives; FLPMA Section 203 criteria were not fully analyzed and the land disposal does not meet their intent; and FLPMA and ARMP requirements are not met as regards the Goals, Objectives and Actions contained in the ARMP. The Director's Protest Resolution Report was issued on February 20, 2020, when Pendley was serving in the role of Acting Director of the BLM under color of Amendment No. 30 to Secretarial Order 3345.

56.     On April 21, 2020, BLM issued the ROD for the Haiwee Geothermal Leasing Area of the California Desert Conservation Area ("CDCA") Plan, designating approximately

22,800 acres as available for geothermal exploration and development, revising the Special Unit

Management Plans for four Areas of Critical and Environmental Concern ("ACEC") to remove

existing surface occupancy protections, and authorizing three pending non-competitive

geothermal lease applications on 4,460 acres within the Haiwee Geothermal Leasing Area in

Inyo County, California. Plaintiff CBD participated in the administrative process, up to and

including protesting the RMPA. CBD's protest asserted, among other things, that the RMPA

violated FLPMA because BLM failed to consider the RMPA for consistency with and in the

context of the CDCA as a whole, that the BLM's analysis failed to acknowledge the impact of

the non-competitive leases on Areas of Critical Environmental Concern, and that BLM failed to

consider a reasonable range of alternatives to reduce impacts to sensitive resources, among other

critiques. The Director's Protest Resolution Report was issued on April 3, 2020, when Pendley

was serving in the role of Acting Director of the BLM pursuant to Amendment No. 31 of

Secretarial Order 3345.

57.     On May 8, 2020, the ROD for the Gemini Solar Project was signed by Interior

Secretary David Bernhardt, approving the application for a right-of-way grant for the project on

approximately 7,100 acres of BLM land in Clark County, Nevada, and the associated Las Vegas

RMP Amendment. Plaintiff WWP participated in the administrative process, up to and including

a protest of the proposed ROD and RMPA. WWP protested the proposed project and associated

RMPA on the grounds that BLM violated both FLPMA and NEPA by failing to consider an

alternative that designated the region as an Area of Critical Environmental Concern, which

should have fallen within the reasonable range of alternatives considered by the agency on

account of the presence and habitat of threatened desert tortoise and various rare plant species.

The Director's Protest Resolution Report was initially issued on March 6, 2020 and was

supplemented on August 14, 2020.[2] At the time of issuance of the initial Protest Resolution

Report on March 6, 2020, Pendley was serving in the role of Acting Director of the BLM

pursuant to Amendment No. 30 to Secretarial Order 3345. At the time of issuance of the

Supplemental Protest Resolution Report on August 14, 2020, Pendley was serving in the role of

Acting Director of the BLM pursuant to the Succession Memo.

58.     On August 3, 2020, Casey Hammond, Principle-Deputy Assistant Secretary

Exercising the Authority of the Assistant Secretary for Land and Minerals Management, signed

the ROD for the Moneta Divide Natural Gas and Oil Development Project for the exploration

and production of oil and gas resources in Fremont, Natrona, and Sweetwater Counties on

approximately 327,645 acres in Wyoming. Approval of the decision required and included an

amendment to the Casper Resource Management Plan. Plaintiffs WWP, CBD and Guardians

participated administratively up to and including the protest resolution process. Plaintiff groups

protested the ROD and associated RMPA on the grounds that the RMPA violated the Migratory

Bird Treaty Act and failed to comply with the 2015 Wyoming Greater Sage-grouse RMPA, and

challenged the ROD for failure to take a hard look as required by NEPA at direct, indirect, and

cumulative impacts on greater sage-grouse. The Director's Protest Resolution Report was issued

on May 1, 2020, when Pendley was exercising the role of Acting Director pursuant to

Amendment No. 31 to Secretarial Order 3345.

---

[2] BLM issued a supplement to its initial Protest Resolution Report because an additional valid protest was misplaced by the Agency and discovered after the original protest resolution report, necessitating a supplement to address issues contained in the additional protest letter signed by Plaintiff WWP, among other parties. BLM's Supplement Protest Resolution Report incorrectly states that the original Protest Resolution Report was issued May 11, 2020, but the original Protest Resolution Report is dated and was issued on March 6, 2020.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Appointments Clause Violation)

59.     Conservation Groups re-allege and incorporate, as if fully set forth herein, each and every allegation in the preceding paragraphs of this complaint.

60.     The U.S. Constitution's Appointments Clause provides the exclusive appointment scheme for "Officers of the United States." U.S. Const. art. II, § 2, cl. 2.

61.     The Appointments Clause requires the President to nominate and, with the Senate's advice and consent, appoint "Officers of the United States." *Id.*

62.     The Director of the U.S. Bureau of Land Management is an officer of the United States because the position exercises significant authority pursuant to federal law, including the management and development of public lands. Under the Appointments Clause, the Senate must confirm the Director's nomination. *See* 43 U.S.C. § 1731(a).

63.     By exercising the authority of an officer of the United States without Senate confirmation, Pendley violated the Appointments Clause.

### SECOND CLAIM FOR RELIEF
### (FVRA Violation)

64.     Conservation Groups re-allege and incorporate, as if fully set forth herein, each and every allegation in the preceding paragraphs of this complaint.

65.     The Federal Vacancies Reform Act ("FVRA") prescribes the exclusive means by which the President can temporarily install an acting officer to perform the functions and duties of a vacant PAS office. 5 U.S.C. § 3347.

66.     The BLM Director is a PAS office subject to the FVRA. 43 U.S.C. § 1731(a).

67.     Under the FVRA, an officer may not serve as an acting officer for a PAS office if they are nominated by the President for appointment to such office, unless the person was

serving as the first assistant to the PAS office at the time the vacancy arose, the first assistant is itself a PAS office, and the Senate has approved their appointment to such office. 5 U.S.C. § 3345(b).

68.     At the time the BLM Director vacancy arose on January 19, 2017, Pendley was not the first assistant to the BLM Director.

69.     Pendley served as BLM's Acting Director while his nomination for the position of BLM Director was pending in the Senate.

70.     "Once the President submitted [Pendley's] nomination to fill that position in a permanent capacity, subsection (b)(1) of [5 U.S.C. § 3345] prohibited" Pendley from continuing to serve as an acting officer. *See N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 944 (2017).

71.     Since June 30, 2020, Pendley has violated the FVRA by exercising the authority of Acting BLM Director.

72.     Because Pendley's appointment to the position of Acting BLM Director violated the FVRA, the office of the BLM Director "shall remain vacant" and Pendley's actions, including his approvals of the RMPs challenged in this action, insofar as they dictate management of BLM-managed lands, "shall have no force and effect" and "may not be ratified." 5 U.S.C. § 3348(b), (d).

## THIRD CLAIM FOR RELIEF
### (APA Violation)

73.     Conservation Groups re-allege and incorporate, as if fully set forth herein, each and every allegation in the preceding paragraphs of this complaint.

74.     The APA forbids agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," that is "contrary to constitutional right,

power, privilege, or immunity," or that is taken "without observance of procedure required by law," 5 U.S.C. § 706(2)(A), (B), (D).

75.     Secretary Bernhardt's July 29, 2019 appointment of Pendley as Acting BLM Director through an amendment to Secretarial Order No. 3345 and his subsequent amendments to that Order reauthorizing Pendley to serve as Acting Director were unlawful agency actions because they violated the U.S. Constitution and the FVRA.

76.     Pendley's Succession Memo in which he designated himself as the First Assistant and delegated to himself the authority to perform the BLM Director's functions and duties is unlawful and violates the FVRA's exclusive procedures for temporarily authorizing an acting official to perform the functions and duties of the BLM Director.

77.     Pendley's exercise of the BLM Director's authority, and his actions in that role, including the approval of the RMPs at issue in this action, violate the APA and have no force and effect because Pendley was unlawfully serving in that role.

## FOURTH CLAIM FOR RELIEF
### (FLPMA Violation)

78.     Conservation Groups re-allege and incorporate, as if fully set forth herein, each and every allegation in the preceding paragraphs of this complaint.

79.     Congress established the office of the BLM Director under the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701 *et seq.*, and mandated that appointments to that position be made "by the President, by and with the advice and consent of the Senate." *Id.* § 1731(a). As a result, the office of the BLM Director is a PAS office and the President's designation of an Acting BLM Director to temporarily fill a vacancy in that office must be in accordance with the FVRA. 5 U.S.C. § 3345(a).

80.     FLPMA requires BLM, with public participation, to develop and maintain land-use plans for the use of the public lands that it manages. 43 U.S.C. § 1712(a). Under FLPMA's implementing regulations, BLM must develop resource management plans. 43 C.F.R. § 1610.1.

81.     The BLM Director is required to render a decision on the protest of any resource management plan and their decision "shall be in writing and shall set forth the reasons for the decision." 43 C.F.R. § 1610.5-2(a)(3).

82.     Regulations require the BLM Director alone to consider and resolve recommendations and protests on RMPs. *See* 43 U.S.C. § 1701(a)(8); 43 C.F.R. §§ 1610.3-2(e), 1610.5-2(a)(3). This role is therefore a nondelegable "function or duty" of the BLM Director under the FVRA. 5 U.S.C. § 3348(a)(2).

83.     The BLM Director's protest ruling finalizes the resource-management-planning process. 43 C.F.R. § 1610.5-2(b); *Or. Natural Desert Ass'n v. Bureau of Land Management*, 625 F.3d 1092, 1097 (9th Cir. 2010).

84.     Because Pendley was illegally exercising the functions and duties of the BLM director when the protest resolutions for the challenged RMPs were issued, the protest resolution process, and by extension the approval of the challenged RMPs, violate FLPMA.

## REQUEST FOR RELIEF

Plaintiffs respectfully requests that this Court:

A.     Declare that William Perry Pendley's appointment as Acting BLM Director, his exercise of the Director's functions and duties, and his actions in that role, including while his nomination for the office of the BLM Director was pending before the Senate, violate the U.S. Constitution, the Federal Vacancies Reform Act, and the Administrative Procedure Act;

B.      Vacate the challenged RMP protest resolutions and associated RODs, and remand

them to the BLM for resolution consistent with the Court's opinion.

C.      Award Plaintiffs their costs, attorneys' fees, and other expenses as provided by

applicable law; and

D.      Grant such other relief as this Court deems just, proper, and reasonable.

Dated this 24th Day of February, 2021,

Respectfully submitted,


/s/ Melissa Hornbein
Melissa A. Hornbein (MT Bar No. 9694)
*Admitted Pro Hac Vice*
WESTERN ENVIRONMENTAL LAW CENTER
103 Reeder's Alley
Helena, Montana 59601
406.708.3058
hornbein@westernlaw.org

/s/ Kyle Tisdel
Kyle J. Tisdel (D. D.C. Bar No. NM006)
WESTERN ENVIRONMENTAL LAW CENTER
208 Paseo del Pueblo Sur, Unit 602
Taos, New Mexico 87571
575.613.8050
tisdel@westernlaw.org

*Counsel for Plaintiffs*

/s/ W.J. Snape III
William J. Snape III (D.C. Bar No. 455266)
CENTER FOR BIOLOGICAL DIVERSITY
1411 K Street N.W., Suite 1300
Washington, D.C. 20005
202.536.9351
bsnape@biologicaldiversity.org
wsnape@wcl.american.edu

/s/ Diana Dascalu-Joffe
Diana Dascalu-Joffe
(CO Bar No. 50444 *pro hac vice pending*)

25

CENTER FOR BIOLOGICAL DIVERSITY
1536 Wynkoop St., Ste. 421
Denver, CO 80202
720.925.2521
ddascalujoffe@biologicaldiversity.org

*Counsel for Plaintiff Center for Biological Diversity*

/s/ Samantha Ruscavage-Barz
Samantha Ruscavage-Barz (Bar No. CO0053)
WILDEARTH GUARDIANS
301 N. Guadalupe Street, Ste. 201
Santa Fe, NM 87501
505.401.4180
sruscavagebarz@wildearthguardians.org

*Counsel for Plaintiff WildEarth Guardians*